ISMOND v. SCOUGALE.

1. TROVER—PLEADING—NOTICE OF DEFENSE—FRAUDULENT CON-
VEYANCES.
   In trover by one claiming, as purchaser, goods seized by defend-
   ant under attachment, notice with the plea that the goods
   attached belonged to the person claimed to have sold them is
   sufficient to apprise plaintiff that the *bona fides* of the sale is
   questioned, and to admit evidence that it was fraudulent.

2. SAME—CONSIDERATION—EVIDENCE.
   In an action of trover it appeared that one A. purchased a
   stock of goods, worth from $1,500 to $1,700, upon credit to an
   amount exceeding $1,300. After a claimed exchange of the
   goods for real estate owned by plaintiff, defendant attached
   them as the property of A., maintaining that the alleged
   exchange was a sham to defraud creditors. Plaintiff claimed
   that a loan to A. of $75, represented by a note given some
   time previous to the exchange, figured as a part of the con-
   sideration. He admitted that the note remained among his
   papers, that a portion of the land was worth less than $200,
   and that the residue was mortgaged for $250. *Held,* that
   evidence that the mortgaged land was worth less than the
   amount of the incumbrance was admissible, in connection
   with the other evidence, as bearing on the existence of a
   fraudulent intent.

Error to Shiawassee; Smith, J. Submitted April 18,
1899. Decided June 5, 1899.

Trover by Oscar C. Ismond against Monroe L. Scougale,
sheriff of Shiawassee county. From a judgment for
plaintiff, defendant brings error. Reversed.

*Charles M. Hamper* (*Van Ranst Pond* and *Charles
A. Withey*, of counsel), for appellant.

*Watson & Chapman*, for appellee.

LONG, J. This is an action on the case, brought against

the defendant, who is sheriff of Shiawassee county, to recover the value of certain goods taken on a writ of attachment in favor of the Rodgers Shoe Company against Willis L. Ash and Alice Boyd, partners under the firm name of Ash & Boyd. It appears that Ash & Boyd were carrying on a retail shoe business at Durand, in that county, in May, 1898. Their stock was worth from $1,500 to $1,700. They were largely indebted to the Rodgers Shoe Company, of Toledo, Ohio. The credit man of the company (one Robert W. Barton) visited Ash & Boyd on May 12, 1898, to get security for the amount of the indebtedness to his firm; this indebtedness growing out of sales of shoes to the firm. Instead of giving security, they gave their note for $1,047.58, and made a statement in writing to him of the assets and liabilities, showing their assets at $2,200, and liabilities as follows:

| | |
|---|---|
| To Rodgers Shoe Company | $1,047 58 |
| " N. W. Gokey & Son | 189 00 |
| " Childs & Lee | 100 25 |
| | $1,336 83 |

They also on the same day wrote the Rodgers Shoe Company, at Toledo, that there would be no incumbrance placed on the stock while they were indebted to the company; that the prospects were good for a nice spring trade; and saying they would pay $50 per week on the note. The note was payable on demand. On the next day after the giving of this note, Ash & Boyd claimed to have sold out to the plaintiff, who went into possession of the store and goods. On June 11th following, the attachment was levied in behalf of the Rodgers Shoe Company. On going into possession of the goods on May 14th, plaintiff kept Ash with him in the store, and immediately issued the following advertisement of sale of the stock:

"Klondike in Durand. Closing-Out Sale of Boots and Shoes. Now is your chance. The Ash & Boyd stock of boots and shoes will be sold for what they will bring," etc.

The claim of the defense is that the pretended sale to the plaintiff by Ash & Boyd was a mere sham and subterfuge to cheat and defraud the Rodgers Shoe Company out of its claim. The plaintiff testified that he received the goods from Ash & Boyd in exchange for 80 acres of land in Benzie county, a lot in Battle Creek, and a note or obligation he held against Mr. Ash of about $75. On his cross-examination he was asked in reference to this Battle Creek lot, and stated that it was not worth $200; that the land in Benzie county was mortgaged for $236, with accumulated interest of $20. Being asked about the Ash obligation, he said he loaned money some time before to Ash to about $75, and took his note; that the note was probably with his papers in Battle Creek. Mr. Nathan Dedgen was called as a witness for the defendant, and testified that he knew the land in question in Benzie county; that a fair valuation of it would be from 50 to 75 cents per acre; that it was 80 acres, and was not worth the mortgage on it; and that plaintiff got it without ever seeing it. Defendant also produced as a witness one William Habbler, and asked him if he knew the value of the Benzie county land. This was objected to, and the court asked:

"How is it important at all as to how good a bargain Ismond [the plaintiff] got out of these parties for the store, unless there was a combination to perpetrate a fraud upon the creditors of your shoe company? * * *

"*Counsel:* Suppose this land was worth only 50 cents an acre, and that was all he paid for these boots and shoes; * * * I would like to ask if that is not evidence of fraud.

"*The Court:* If Ash & Boyd were bringing suit against Ismond, it might be evidence of fraud, but it is not evidence of fraud for the purpose of defrauding the shoe company, because, if he bought it for nothing of these parties, it did not concern the shoe company. They had no lien upon the property.

"*Counsel:* We cannot put in all the evidence at once.

"*The Court:* There ought to be some evidence tending to show some purpose in defrauding the parties who were operating under the attachment. The objection is good, as being incompetent and immaterial."

Other and like testimony was excluded by the court. In fact, all through the trial the court refused to receive evidence which was offered tending to show that the transaction between the plaintiff and Ash & Boyd was a sham, and yet the court stated that there was nothing offered tending to show that any fraud was attempted to be perpetrated. The only question submitted to the jury was as to the value of the stock taken from the plaintiff.

The court was in error in this. The notice under the plea of the general issue was that the stock attached was the property of Ash & Boyd. This was sufficient notice of the defendant's claim. It was stated repeatedly by counsel for defendant that they claimed that the transaction between the plaintiff and Ash & Boyd was a fraud upon the creditors of Ash & Boyd. The Rodgers Shoe Company was an attaching creditor, and had the right to contest the *bona fides* of this claimed sale to the plaintiff. There was some testimony received in the case which had a tendency to show this, and other testimony was offered which the court improperly ruled out. Great latitude should have been allowed in admitting testimony which had a tendency to show the true state of facts in reference to the transaction. It was of great importance to show just how the plaintiff became possessed of this stock of goods. If this land in Benzie county was worth no more than the mortgage upon it, the jury had the right to consider that as some evidence of fraud. The fact that the note, which was a part of the consideration for the sale, was still in plaintiff's possession at Battle Creek, had some tendency to show fraud. At least, these were questions for the consideration of the jury.

The jury returned a verdict in favor of plaintiff. The judgment must be reversed, and a new trial granted.

The other Justices concurred.